# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

**JAMES KEITH COOLEY**                                                    **PLAINTIFF**

**vs.**                                        **CIVIL ACTION No.: 2:16-CV-211-HTW-LRA**[1]

**CITY OF WAYNESBORO;**
**JAMES BUNCH; and MARK WEST**                              **DEFENDANTS**

## ORDER GRANTING SUMMARY JUDGMENT

BEFORE THIS COURT is the Motion for Summary Judgment filed by the individual defendants, James Bunch and Mark West. **[Docket no. 68]**. In their motion, the individual defendants argue that this court should grant summary judgment under the authority of Rule 56[2] of the Federal Rules of Civil Procedure for various reasons. The plaintiff has failed to respond to the individual defendants' Motion for Summary Judgment. After a review of the individual defendants' pleadings this court finds that their Motion for Summary Judgment is well-taken and should be GRANTED.

## I.    JURISDICTION

Plaintiff James Keith Cooley has invoked the subject-matter jurisdiction of this court under Title 28 U.S.C. § 1331[3], often referred to as "federal question jurisdiction." Under federal question

---

[1] The case number originally assigned to this matter was 4:11-cv-116-HTW-LRA. This case was transferred from the Northern Division on December 7, 2016, when this court lifted the stay of this matter. The United States District Court Clerk for the Southern District of Mississippi then assigned the current case number to comply with the Realignment Act signed into law on December 20, 2013, and the Administrative Order filed on December 26, 2013.

[2] (a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56.

[3] The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

28 U.S.C.A. § 1331 (West).

jurisdiction, this court has the power to exercise subject-matter jurisdiction over a lawsuit if a plaintiff alleges some claim or right arising under the United States Constitution or federal law.

The Defendants have not challenged subject matter diversity jurisdiction; nevertheless, this court has an independent obligation to verify it possesses subject matter jurisdiction.[4]

Upon a review of the pleadings of the parties, this court finds it possesses federal question subject matter jurisdiction because James Keith Cooley asserts various claims under the authority of Title 42 U.S.C. § 1983[5], a federal enactment. This court also finds that it possesses supplemental jurisdiction over Cooley's state law claims under the authority of Title 28 U.S.C. § 1367[6].

## II.    PROCEDURAL HISTORY

The plaintiff, James Keith Cooley (hereinafter referred to as "Cooley"), filed his complaint in this federal forum on July 12, 2011. [Docket no. 1]. In his complaint Cooley alleged causes of action for: 42 U.S.C. § 1983 – Freedom of Expression and Speech; 42 U.S.C. § 1983 – Unlawful

---

[4] Federal courts are obliged to examine the basis for the exercise of federal subject-matter jurisdiction. *Smith v. Texas Children's Hospital*, 172 F.3d 923, 925 (5th Cir. 1999). A federal district court may examine its subject-matter jurisdiction over a matter, *sua sponte*, at any time. *Giles v. Nylcare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999) (a court must raise the issue *sua sponte* if it discovers that it lacks subject matter jurisdiction); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 2007). Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." (emphasis added).

*Dean v. Mozingo*, 521 F. Supp. 2d 541, 551 (S.D. Miss. 2007)(overturned on other grounds).

[5] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C.A. § 1983 (West).

[6] (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C.A. § 1367 (West).

Detention; 42 U.S.C. § 1983 – Excessive Force; 42 U.S.C. § 1983 – Pursuit of Happiness; 42 U.S.C. § 1983 – Malicious Prosecution; 42 U.S.C. § 1983 – Right to be Free on His Property and in His Person Without Interference From the State; 42 U.S.C. § 1983 – Due Process; Battery; Trespass to Land; Malicious Prosecution; Wrongful Arrest; False Imprisonment; Tortious Interference with Business; and Conspiracy.

The defendants filed their Answer on August 12, 2011. [Docket no. 3]. The same day, August 12, 2011, the defendants filed their Motion for Qualified Immunity. [Docket no. 5]. The parties engaged in immunity related discovery. On February 8, 2012, this court denied the Motion for Qualified Immunity as premature and staying the case pending the close of immunity related discovery. [Docket no. 27].

On May 21, 2012, the parties jointly moved to dismiss the plaintiff's claims against defendant Brian Everett with prejudice, which this court granted. [Docket no. 45].

The individual defendants filed their first Motion for Summary Judgment on June 8, 2012 alleging the same grounds as they have in their Motion for Summary Judgment currently before this court.

This court held a hearing in this matter on October 10, 2012, regarding the first Motion for Summary Judgment [Docket no. 47]. At that hearing, this court stayed the lawsuit *subjudice* pending the outcome of the criminal charges that are the subject of this litigation. [Docket no. 61].

This court held a status conference in this matter on December 2, 2016, to determine if this matter was a live controversy. The parties indicated that this lawsuit is still a live controversy, to which this court allowed the individual defendants to re-urge their motion for summary judgment by January 10, 2017. [Docket no. 65]. The court allowed the plaintiff until January 24, 2017, to

respond. [Docket no. 65]. The plaintiff's attorney, Michael Crosby, file a Motion for Extension of Time to File a Reply [Docket no. 70] which this court granted.

On March 2, 2017, this court again asked the parties for a written status update, to which the parties replied that this matter was still a live controversy. Attorney Crosby acknowledged that his reply to the motion for summary judgment was due on March 6, 2017. [Docket no. 72]. Despite his tacit acknowledgement of this deadline, Attorney Crosby never filed a response.

This court issued a show cause order on May 30, 2017, ordering Attorney Crosby to show why he had not replied to the Motion for Summary Judgment. [Docket no. 73]. Attorney Crosby filed his response on June 6, 2017, stating that he did not expect that he would be responsible for replying to the motion for summary judgment and asking the court to allow him time to file a reply. [Docket no. 74]. Attorney Crosby again did not file any reply to the motion for summary judgment.

On August 4, 2017, this court issued its final extension of time to Cooley ordering that he must file his reply to the motion for summary judgment no later than August 18, 2017. [Text Only Order 8/4/2017]. Attorney Crosby still has not filed his reply to the motion for summary judgment.

### III.    FACTUAL BASIS

The plaintiff has failed to respond to the individual defendants' Motion for Summary Judgment; therefore, this court will accept the facts presented in the individual defendants' Motion for Summary Judgment as undisputed. *See* F.R.C.P. 56(e)(2).[7] This court has given the plaintiff

---

[7] (e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

　　(1) give an opportunity to properly support or address the fact;

　　(2) consider the fact undisputed for purposes of the motion;

　　(3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or

　　(4) issue any other appropriate order

Fed. R. Civ. P. 56

ample opportunity to reply to the motion for summary judgment as allowed under F.R.C.P. 56(e)(1). Accordingly, this court must take the facts submitted by the defendants in their brief in support of their motion for summary judgment. [Docket no. 69].

On April 23, 2010, at approximately 8:00 a.m., the Wayne County, Mississippi Emergency Operations Center (hereinafter referred to as "Central Dispatch") received a call from an unknown male citizen indicating that a female driver had been involved in a single-car accident in front of a restaurant named Mississippi Fried Chicken on Mississippi Drive in the City of Waynesboro, Mississippi. The caller informed Central Dispatch that a male individual was now driving the vehicle involved in the single-car accident and that both the male and female were leaving the scene of the accident.

Waynesboro Policeman, Sgt. Mark West (hereinafter referred to as "Sgt. West") was dispatched to the scene of the accident. When Sgt. West arrived in front of Mississippi Fried Chicken, however, he was unable to locate any automobile accident.

Shortly thereafter, Central Dispatch received another call regarding an accident in the same area of Waynesboro, Mississippi. The manager of the local Kentucky Fried Chicken (hereinafter referred to as "KFC"), Rebecca "Becky" Reynolds (hereinafter referred to as "Reynolds"), had called Central Dispatch and informed it that Cooley's ex-wife, Sadie Cooley (hereinafter referred to as "Sadie"), had just driven through the bushes at KFC, collided with Reynolds' parked car and then left the scene. Reynolds identified Sadie as the individual who had collided with her parked car. Reynolds also had reported that Sadie was driving a white Cadillac Escalade whose tag began with the letters "WYF." According to Reynolds, the Cadillac was now parked at Cooley's place of business — Cooley Drugs — just down Mississippi Drive from the KFC.

Central Dispatch then contacted Sgt. West and informed him about the evolving situation. Sgt. West sent Waynesboro Police Officer Stevie Walker (hereinafter referred to as "Officer Walker") to KFC to speak with Reynolds. Sgt. West went to Cooley Drugs to continue his investigation. While traveling down Mississippi Drive towards Cooley Drugs, Sgt. West saw a white Cadillac Escalade in the parking lot behind Cooley Drugs. The Cadillac matched the description of the vehicle reported to Central Dispatch. Sgt. West drove into the parking lot directly behind Cooley Drugs to investigate the Cadillac.

Sgt. West parked his cruiser and contacted Central Dispatch, informing Central Dispatch that he had found a white Cadillac Escalade with the tag number "William, Young, Frank, 9, 6, 3." The tag number on the Cadillac — WYF963 — matched the preliminary numbers previously given to Central Dispatch by Reynolds. Sgt. West exited his patrol car and approached the white Cadillac Escalade where he saw Sadie in the back seat of the Cadillac, allegedly asleep or passed out.

According to Sgt. West, Cooley came out the back door of Cooley Drugs and approached him. Cooley told Sgt. West to get off his property, and that he was trespassing. Sgt. West responded that he was investigating an auto accident and that as soon as he completed his investigation he would leave the premises.

Cooley testified in his deposition that when he spoke to Sgt. West, he told Sgt. West to leave the property. Cooley contends he told Sgt. West that Sgt. West was not authorized to come onto Cooley's property. Cooley then asked Sgt. West whether Sgt. West had changed a report Sgt. West had written regarding a burglary that had taken place at Cooley Drugs — a report Cooley says was falsified. After that inquiry, Cooley went back inside Cooley Drugs, leaving Sgt. West in the parking lot.

After his conversation with Cooley, Sgt. West called his shift supervisor to inform him of the confrontation. Sgt. West's shift supervisor was occupied with another call and unavailable. Sgt. West next called Chief Jimmie Bunch (hereinafter referred to as "Chief Bunch") as a result. Sgt. West informed Chief Bunch that he was investigating an automobile collision involving Sadie, that she had fled the scene of the accident, and was now parked at Cooley Drugs. Sgt. West further advised Chief Bunch that Cooley had told him to get off his property and threatened to charge him with trespassing. Sgt. West told Chief Bunch that, given Cooley's attitude towards him, he felt Cooley was going to give him problems with the accident investigation.

Meanwhile, Officer Shannon Smith (hereinafter referred to as "Officer Smith") arrived at Cooley Drugs to assist Sgt. West. As Officer Smith arrived, Cooley came back out of the drugstore and again told Sgt. West to get off his property, or he would press trespassing charges against Sgt. West.

After speaking with Sgt. West over the phone, Chief Bunch drove to Cooley Drugs to try to "smooth things over." Within five (5) or six (6) minutes of receiving the call from Sgt. West, Chief Bunch arrived at the back parking lot of Cooley Drugs. Moments after Chief Bunch arrived, Cooley approached him in an aggressive manner and told him that Cooley wanted the officers to leave the Drug Store parking lot immediately. Chief Bunch replied by telling Cooley that the City of Waynesboro Police Officers were engaged in a police investigation and that if Cooley would "just give it a few minutes" the officers would "be gone." Cooley informed the Chief that he "had nothing to do with this matter, that they should go on and let [him] conduct business, they were blocking [his] drive-through and hindering [his] business."

Cooley then took a step in the direction of officers working Sadie's accident. Chief Bunch, who didn't want Cooley interfering with the investigation, placed his hand on Cooley's arm to

restrain him from going towards the officers. Chief Bunch then instructed Cooley to go back inside his store and allow the officers to conduct their investigation. To which Cooley then allegedly replied: it would be in [Chief Bunch's] "best interest…to get [his] f…ing hands off" him, while Cooley was pushing Chief Bunch's hand off Cooleys biceps.

Chief Bunch testified that he felt threatened by Cooley and reached for his handcuffs and told Cooley that he was under arrest. Cooley immediately took flight in an attempt to evade arrest.

Cooley admits Chief Bunch instructed him to go back into his store; however, Cooley tells a markedly variant version: he contends Chief Bunch commanded him to go into the store to retrieve Sadie's car keys, to which he responded that he did not have a set of keys to the Escalade because he had lost the car in the divorce proceeding with Sadie. Cooley says he next told the officers to leave the premises as he "had nothing to do with [the] matter" and they should "go on and let [him] conduct business…" Cooley then alleges that Chief Bunch put his hand on Cooley's bicep and ordered him inside to get the car keys or Chief Bunch would arrest him. Cooley claims he responded "how can I, with you holding my arm?" According Cooley, he then "jerked" away and "pulled loose" from Chief Bunch and started calmly towards the store.

Although Sgt. West commanded Cooley to stop when he moved away from Chief Bunch, Cooley claims he only heard Chief Bunch tell Sgt. West to "shoot." Cooley admits that he ran from Chief Bunch and Sgt. West. Cooley testified in his deposition that he ran "sideways while looking back…trying to get away from being shot" and that he made a "kind of zigzag" and a "sidestep" to "keep from being shot."

Cooley had a federal firearm's license and at that time, his drug store contained, by his count, approximately 200 weapons. Both Chief Bunch and Sgt. West were aware of the arsenal in Cooley's store.

Once Cooley fled from arrest, Chief Bunch and Sgt. West both gave chase. As Sgt. West chased Cooley, he drew his Taser[8], and ordered Cooley to stop. When Cooley did not obey his command, Sgt. West fired the Taser, striking Cooley in his back. The Taser automatically cycled and stopped Cooley from fleeing, forcing him to the ground.

Once Cooley hit the ground, he immediately "reached around behind [his] back" to, according to Cooley, "see what [he] had been shot with." Chief Bunch and Sgt. West both believed that Cooley was reaching around behind his back in an effort to pull one of the Taser leads from his back. Had Cooley been able to do so, he would have been able to break the electric circuit of the Taser and, thereby, neutralize it. Since Cooley was not yet subdued — not yet in handcuffs nor under Chief Bunch or Sgt. West's control — Sgt. West cycled the Taser again.

After the second cycle, Chief Bunch was able to grab Cooley's hands and handcuff him. The City of Waynesboro Police Officers then transported Cooley to the local jail and charged him with resisting arrest and disorderly conduct.

---

[8] A Taser or conducted electrical weapon (CEW) is an electroshock weapon sold by Axon. It fires two small dart-like electrodes, which stay connected to the main unit by conductors, to deliver electric current to disrupt voluntary control of muscles causing "neuromuscular incapacitation". Someone struck by a Taser experiences extreme pain and over-stimulation of sensory nerves and motor nerves, resulting in strong involuntary muscle contractions.

On April 20, 2011, Cooley was convicted by the Wayne County, Mississippi Justice Court of disorderly conduct (failure to comply)[9] and resisting arrest[10]. Cooley appealed his convictions to the Circuit Court; however, during the pendency of his appeal, Cooley was charged with felonies in both the State of Alabama and the State of Mississippi. Neither felony was related to Cooley's criminal charges underlying this matter.

Special Prosecutor Frances Smith Stephenson and Cooley voluntarily entered a *Nolle Prosequi* Agreement to dismiss Cooley's misdemeanor convictions. The Wayne County Circuit Court entered an Order of *Nolle Prosequi* finding that Cooley's misdemeanor criminal appeal was not being dismissed because Cooley was innocent but, rather, for purposes of judicial economy given the pendency of felony charges against him.

## IV.    DISCUSSION

### a.    *Summary Judgment Standard of Review*

"When considering a motion for summary judgment, the court must view the pleadings and evidentiary material, and the reasonable inferences to be drawn therefrom, in the light most favorable to the non-moving party, and the motion should be granted only where there is no genuine issue of material fact." *Thatcher v. Brennan*, 657 F. Supp. 6, 7 (S.D. Miss. 1986), aff'd, 816 F.2d 675 (5th Cir. 1987)(citing *Walker v. U-Haul Co. of Miss.*, 734 F.2d 1068, 1070-71 (5th

---

[9] (1) Whoever, with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer, having the authority to then and there arrest any person for a violation of the law, to:

> (a) Move or absent himself and any vehicle or object subject to his control from the immediate vicinity where the request, command or order is given, [...]

> (i) Act or do or refrain from acting or doing as ordered, requested or commanded by said officer to avoid any breach of the peace at or near the place of issuance of such order, request or command, shall be guilty of disorderly conduct, which is made a misdemeanor and, upon conviction thereof, such person or persons shall be punished by a fine of not more than Five Hundred Dollars ($500.00) or imprisonment in the county jail for not more than six (6) months, or by both such fine and imprisonment.

Miss. Code. Ann. § 97-35-7 (West).

[10] It shall be unlawful for any person to obstruct or resist by force, or violence, or threats, or in any other manner, his lawful arrest or the lawful arrest of another person by any state, local or federal law enforcement officer, and any person or persons so doing shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not more than Five Hundred Dollars ($500.00), or by imprisonment in the county jail not more than six (6) months, or both.

Miss. Code. Ann. § 97-9-73 (West).

Cir. 1984)); See also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356-57, 89 L. Ed. 2d 538, 553 (1986). The court must decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).

However, a motion for summary judgment may not be granted by default. "Ultimately, '[t]he movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed.' *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir.1985)."

> If the nonmovants fail to respond appropriately, or if they fail to respond at all, summary judgment is not awarded to the moving parties simply by default. See *Ford—Evans v. Smith*, 206 F. App'x 332, 334 (5th Cir.2006); Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 362 n. 3 (5th Cir.1995) (*quoting Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir.1985)); *John v. Louisiana*, 757 F.2d 698, 708 (5th Cir.1985). Summary judgment is appropriate only if the moving parties have demonstrated the absence of a genuine dispute of material fact, and shown that judgment is warranted as a matter of law. *See Adams v. Travelers Indem. Co. of Conn*., 465 F.3d 156, 163 (5th Cir.2006).
>
> *Palmer v. Chicago Title Ins. Co*., 2013 U.S. Dist. LEXIS 84806, 2013 WL 3049343, at *2 (S.D. Tex. June 17, 2013).

*Greer v. Healthcare Fin. Servs. LLC (In re Greer)*, 498 B.R. 98, 107 (Bankr. S.D. Miss. 2013).

**b.** *Heck v. Humphrey*, 512 U.S. 477 (1994)

The defendants ask this court to find that *Heck v. Humphrey*, 512 U.S. 477 (1994) applies and this case should be dismissed because Cooley has not obtained a "favorable termination" of the underlying criminal charges which color this litigation. In *Heck*, the United States Supreme Court utilized the jurisprudence surrounding the common law tort of malicious prosecution to determine that a plaintiff cannot bring a lawsuit to challenge a conviction if the underlying conviction had not been favorably terminated.

The plaintiff says that *Heck* does not apply because his underlying criminal prosecutions had *nolle prosequi* orders entered. *Heck* requires that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas

corpus, 28 U.S.C. § 2254." *Heck* at 486-487. This court, then, must look to determine if a *nolle prosequi* is a "favorable termination" for the *Heck* analysis.

This court had found no authority to support either position under the *Heck* progeny. *Heck* itself provides guidance however: "[t]he common-law cause of action for malicious prosecution provides the closest analogy to claims of the type considered here because, unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." *Id* at 483. Accordingly, this court next turns to the common-law tort of malicious prosecution for further guidance.

Malicious prosecution requires the plaintiff to prove the following elements if he/she wishes to triumph:

1. The institution or continuation of original judicial proceedings, either criminal or civil;
2. By, or at the insistence of the defendants;
3. The termination of such proceeding in plaintiff's favor;
4. Malice in instituting the proceedings; and
5. The suffering of damages as a result of the action or prosecution complained of.

*Wilson v. City of Biloxi, Mississippi, et al*, 2013 WL 2244309, *8 (S.D. Miss. May 21, 2013)(Quoting *Bearden v. BellSouth Telecommunications, Inc.,* 29 So.3d 761,764 (Miss. 2010)). The third element is the analogous element with the *Heck* analysis.

In *Wilson*, United States District Court Judge Halil S. Ozerden found that the trial court entered a *nolle prosequi* order based on judicial economy, not as a favorable termination in the plaintiff's favor. *Id*. The stated basis for dismissal without prejudice was lack of jurisdiction. *Id*. "[D]ismissal of criminal charges for lack of jurisdiction does not reflect on the merits of the case against [the plaintiff]" *Id*. (Quoting *Bearden* 29 So.3d at 764).

On the other hand, United States District Court Judge Tom S. Lee found a "favorable termination" where a state prosecutor had requested a *nolle prosequi* order after the prosecutor determined he did not possess enough evidence to convict the plaintiff. *Polacek v. Kemper County, Mississippi, et al.* 2011 WL 9024 (S.D. Miss. Jan. 3, 2011). Judge Lee concluded that the *nolle prosequi* order entered by the state trial court was based on the merits of the criminal charges and, therefore, acted as a "favorable termination".

Between the above two juridical shoals, this court now determines where the facts *sub judice* point. The required analysis is not complicated.

In the lawsuit *sub judice*, Wayne County Justice Court Judge Tobey Bartee found Cooley guilty of the underlying criminal charges at a bench trial. Cooley appealed those convictions for a jury trial *de novo* and was waiting for that jury trial when he was charged with new felonies in Alabama and Mississippi state courts. Thereafter, Cooley and his prosecutor agreed to *nolle prosequi* Cooley's underlying convictions based on judicial economy and not the merits of the case. The agreement between Cooley and the prosecutor says as much: "The parties understand that this matter is being dismissed not based upon the Defendant's innocence, but based on judicial economy." [Docket no. 63-3]. Cooley's attorney in both the state court convictions underlying this matter and in this matter itself, Attorney Michael Crosby, signed the Agreement. [Docket no. 63-3]. Based on that Agreement, DA Stephenson moved *ore tenus* for the trial court to *nolle prosequi* Cooley's underlying convictions. The court's order of *nolle prosequi* states:

> This cause having come to be heard this day on an *ore tenus* motion of the State of Mississippi, by and through its Special Prosecutor, to Nolle Prosequi the charges of disorderly conduct and resisting arrest against the Defendant due to the Defendant having pending felony charges in Wayne County, Mississippi and in Alabama and in the interest of judicial economy.

[Docket no. 63-2].

This court is persuaded that the order of *nolle prosequi* entered in Cooley's underlying state convictions was not a "favorable termination" for purposes of *Heck*. This court, therefore, now must determine which of the causes of action Cooley has asserted are barred by *Heck*.

i. False Arrest

Cooley was found guilty of disorderly conduct and resisting arrest. As discussed *supra*, Cooley has not obtained a "favorable termination" of his underlying criminal convictions. For Cooley to succeed on his false arrest claim, Cooley must show that the officers lacked probable cause to arrest him. *See Queen v. Purser*, 109 Fed.App'x 659 (5th Cir. 2004). If Cooley were successful on his cause of action for false arrest, it would necessarily implicate the validity of his underlying criminal convictions. This court, therefore, finds that Cooley's false arrest cause of action is barred by *Heck*.

ii. Violation of Freedom of Expression

Cooley's cause of action for violation of his freedom of expression is differently postured. Cooley alleges that Chief Bunch violated his constitutionally-guaranteed freedom of expression by attempting to curb his freedom of speech. Cooley complains that, at the time, he was merely trying to assert that he did not possess the keys to his ex-wife's vehicle and to obtain more information about an allegedly falsified police report.

This contention by Cooley necessarily attacks the validity of his underlying conviction. To agree with Cooley's assertion, this court would also have to conclude that Chief Bunch arrested Cooley not for any criminal activity, but, in an effort unconstitutionally to curb Cooley's freedom of speech. Undermined would be Chief Bunch's contention that he had probable cause to arrest Cooley. *See Howell v. St. Tammany Parrish Sch. Bd.*, 2009 WL 387323 (E.D. La. Nov. 12, 2009); *Crow v. Comal Co., Tx.,* 2001 WL 1910555 (W.D. Tex. June 13, 2001); *Love v. Hamlin*, 1995 WL

1945473 (N.D. Miss. Mar. 9, 1995) This court, therefore, finds that Cooley's claim, violation of his freedom of expression, is barred by *Heck*.

### iii. Excessive Force

Cooley claims also that law enforcement used excessive force in effectuating his arrest when they twice used a Taser on him. This court's analysis beings with the following observation:

> Although the *Heck* principle applies to § 1983 excessive force claims, the determination of whether such claims are barred is analytical and fact-intensive, requiring us to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction.

*Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008). "A claim that excessive force occurred after the arrestee has ceased his or her resistance would not necessarily imply the invalidity of a conviction for the earlier resistance." *Id* at 498.

In this lawsuit, Cooley alleges that Sgt. West used excessive force when he utilized his Taser on Cooley. According to Cooley, he was not resisting arrest but returning to his pharmacy when Chief Bunch ordered Sgt. West to shoot. Cooley does not say who or with what Chief Bunch ordered Sgt. West to shoot. This court finds it dispositive that: Sgt. West believed that Cooley was fleeing a legal arrest order; Sgt. West knew that Cooley had multiple firearms in his store; and Sgt. West believed that Cooley was attempting to remove the Taser darts from his back after he was shot, but not yet in custody.

In order for Cooley to prevail on his excessive force claim, Cooley's resisting arrest conviction would necessarily have to be declared invalid. This court, therefore, finds that Cooley's excessive force claim is barred by *Heck*.

iv.  Malicious Prosecution

As discussed in Section IV(b), *supra*, Cooley's claim of malicious prosecution is barred by *Heck*.

v.  Supervisory Liability

The defendants' cursory treatment of how *Heck* would bar supervisory liability provides this court with no authority for their position[11]. The defendants assert that because Cooley must demonstrate a constitutional violation, it would necessarily invalidate the underlying conviction. This court is not persuaded by the defendants' argument, as various factual scenarios under claims of failure to supervise or train might not run afoul of *Heck*.

This court, however, after a careful review of the pleadings in this lawsuit, still cannot provide Cooley any benefit of this observation because this court cannot ascertain in his complaint where Cooley asserted this cause of action. This court, therefore, finds that supervisory liability is not a claim asserted by Cooley.

c.  *Qualified Immunity*

The defendants also assert a qualified immunity defense. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). *See also Anderson v. Creighton*, 483 U.S. 635, 638 (1987). More specifically, the doctrine addresses the "concern that expansive civil liability for actions taken while on duty may cause police officers to hesitate before acting – a situation that could

---

[11] The cases provided by the defendants in their memorandum brief do not support the position that a successful supervisory liability claim would invalidate an underlying criminal conviction, thereby running afoul of *Heck*.

produce unwelcome results." *Sanchez v. Swyden*, 139 F.3d 464, 467-68 (5th Cir.1998) (citations omitted).

"The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority." *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir.1992)(citations omitted). Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Id*. The plaintiff's burden of negating the defendant's qualified immunity defense is a heavy one. *See, e.g., Brown v. Lyford*, 243 F.3d 185, 190, n. 7 (5th Cir. 2001). "Abrogation of qualified immunity is properly the exception, not the rule." *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994) (citation omitted).

To determine whether a defendant is entitled to qualified immunity, a court must address the following questions: "(1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Jennings v. Patton*, 644 F.3d 297, 300 & n .3 (5th Cir. 2011) (internal quotation marks and citation omitted).

The court must "consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007) (citation omitted). "To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions." *Id.* (citations omitted); *see Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Moreover, "because qualified immunity turns only upon the objective reasonableness of the defendant's acts, a particular defendant's subjective state of mind has no bearing on whether that

defendant is entitled to qualified immunity." *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001)(citation omitted).

A defendant's conduct is "objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution[.]" *Id*. That is, "[i]f officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005). The objective-reasonableness "standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (*quoting Malley v. Briggs*, 475 U.S. 335, 343 (1986)). This means that "even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity." *Glenn v. City of Tyler*, 242 F.3d 307, 312 -13 (5th Cir. 2001) (internal quotation marks and citation omitted).

A defendant's "conduct is . . . not objectively reasonable if it violates a clearly established right, because 'a reasonably competent public official should know the law governing his conduct.'" *Guillory v. Thomas*, 355 Fed. App'x 837, 840 (5th Cir. 2009) (*quoting Harlow*, 457 U.S. at 818-19). The law must be "clear in the more particularized sense that reasonable officials should be 'on notice that their conduct is unlawful.'" *Id*. (*quoting Saucier*, 533 U.S. 194, 206 (2001).

"[T]here need not be commanding precedent that holds that the very action in question is unlawful; the unlawfulness need only be readily apparent from relevant precedent in sufficiently similar situations." *Brown v. Miller*, 519 F.3d 231, 237 (5th Cir. 2008) (internal quotation marks and citation omitted)). "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases

then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Kinney*, 367 F.3d at 350 (*quoting Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

### i. False Arrest

To prevail on a false arrest claim under Title 42 U.S.C. § 1983, Cooley must show that Chief Bunch did not have probable cause to arrest him. *Haggerty v. Texas Southern University*, 391 F.3d 653, 655 (5th Cir. 2004). "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.' *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir.2001)." *Id.* at 655–56. "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir.2000).

The defendants assert that Sgt. West is not subject to liability on Cooley's false arrest claim because he did not make the decision to arrest Cooley. This court is not persuaded by the defendants' argument. Sgt. West participated in Cooley's arrest. Sgt. West drew his Taser and fired it at Cooley, thus disabling him and allowing Chief West to handcuff him. Sgt. West clearly assisted in the arrest and, thus, this court must decide whether the aegis of qualified immunity shields him.

An independent judicial officer, Wayne County, Mississippi, Justice Court Judge Tobey Bartee already has found that probable cause existed to arrest Cooley for both resisting arrest and for disorderly conduct. Indeed, Judge Tobey found that Cooley was guilty beyond a reasonable doubt of the crimes for which he was arrested. Chief Bunch and Sgt. West acted "objectively reasonable" in effectuating Cooley's arrest based on probable cause.

This court, therefore, is persuaded that both Chief Bunch and Sgt. West are entitled to qualified immunity for Cooley's claim of false arrest.

ii. Freedom of Speech

In order to prevail on his freedom of speech claim, Cooley would have to prove:

(1) [he was] engaged in constitutionally protected activity, (2) the defendants' actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against [Cooley's] exercise of constitutionally protected conduct.

*Izen v. Catalina*, 398 F.3d 363, 367 (5th Cir. 2005). Additionally, "criminal prosecutions in violation of the First Amendment are actionable only if a plaintiff can also prove the common-law elements of malicious prosecution, including the absence of probable cause to prosecute. *Keenan v. Tejeda*, 290 F.3d 252, 260 (5th Cir. 2002).[12]

This court, in Section IV(c)(i) *supra*, already has found that Chief Bunch and Sgt. West had probable cause to arrest Cooley for resisting arrest and disorderly conduct. Accordingly, this court finds that both Chief Bunch and Sgt. West are entitled to qualified immunity on Cooley's freedom of speech claims.

iii. Excessive Force

To succeed on his excessive force claim, Cooley must prove that: (1) he suffered an injury; (2) resulting directly from a use of force that was clearly excessive; and (3) the excessiveness of the force was clearly unreasonable. *See Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007). This court must examine Sgt. West's use of the Taser on Cooley based on the objective reasonableness

---

[12] *See also Johnson v. Louisiana Dept. of Agriculture*, 18 F.3d 318, 320 (5th Cir. 1994); *Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir.1992) ("An individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause that is in reality an unsuccessful attempt to deter or silence criticism of the government."); *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir.2001).

of the "on-scene perspective" of Sgt. West, and not with the benefit of hindsight. *Saucier v. Katz*, 533 U.S. 194 (2001).

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). Courts pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir. 1998).

In the lawsuit *sub judice*, taking the evidence in a light most favorable to Cooley, this court finds the officers acted objectively reasonably. The court bases its decision on the following facts: Cooley disobeyed a police officer's lawful command; Cooley started running toward his business; Cooley's business contained several hundred firearms; Cooley had been disruptive and interfering with a criminal investigation; and Cooley had made threatening statements and gestures to Sgt. West and Chief Bunch.

This court is persuaded that Sgt. West and Chief Bunch are shielded by the doctrine of qualified immunity from Cooley's claim for excessive force.

iv.   Malicious Prosecution

This court earlier discussed malicious prosecution in Section IV(b), *supra*. For the same reasons, this court finds both Sgt. West and Chief Bunch are entitled to qualified immunity from Cooley's claim of malicious prosecution.

v. Supervisory Liability

As this court has discussed in Section VI(b)(5), *supra*, this court cannot discern where in the complaint that Cooley has properly alleged a cause of action for supervisory liability. Accordingly, this court finds that Cooley's complaint does not assert a cause of action for such.

## V.    CONCLUSION

**IT IS, THEREFORE, ORDERED that the Motion for Summary Judgment filed by the individual defendants [Docket no. 68] be hereby GRANTED.**

**IT IS FURTHER ORDERED that the parties are ordered to contact the United States Magistrate Judge for a scheduling conference for the remaining disputes of this lawsuit.**

**SO ORDERED AND ADJUDGED this the 19th day of September, 2017.**

<u>**s/ HENRY T. WINGATE**</u>
**UNITED STATES DISTRICT COURT JUDGE**